UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON SUTTON,

          Petitioner,

v.

DOUG WADDINGTON,

          Respondent.

Case No. C07-1462-MJP-MAT

ORDER DENYING PETITIONER'S HABEAS CORPUS PETITION

      Petitioner Brandon Sutton ("Sutton") petitions for a writ of habeas corpus following his conviction in Washington state court for felony murder in the first degree. The Court has reviewed Sutton's habeas corpus petition (Dkt. No. 1), Respondent's answer (Dkt. No. 10), Magistrate Judge Theiler's Report and Recommendation (Dkt. No. 16), Petitioner's Objections to the Report and Recommendation[1] (Dkt. No. 17), and Respondent's Memorandum in Response to Petitioner's Objections to the Report and Recommendation (Dkt. No. 20). The court adopts the recommendation of the Magistrate Judge for the reasons discussed below and the petition for a writ of habeas corpus is DENIED.

**Background**

      This case arises from Sutton's felony murder conviction in Washington State court. Sutton's habeas corpus petition states that the information upon which he was convicted failed to set forth the essential elements of any of the predicate felonies, including burglary in the first

---

[1] Petitioner asked the Court to excuse the late filing of his objections in a motion for an extension of time. (Dkt. No. 18.) Those objections were received and have been considered by the Court, and the extension for the late filing is granted.

ORDER – 1

degree, kidnapping in the first degree, and kidnapping in the second degree. Sutton alleges that this omission violates the Sixth and Fourteenth Amendments to the U.S. Constitution. Sutton further alleges that certain statements by the prosecutor during closing argument constituted misconduct and violated his Fourteenth Amendment right to due process.

The State and Sutton presented two different versions of events at trial. The State presented evidence that on December 4, 2000, Sutton, along with Anh Nguyen and Vien Tran, arrived at a house where Karen Do ("Do") lived with her parents and children. (Docket #12, Ex. 7, p. 1; see Ex. 2, p. 8 (listing the date).) The State claimed that Sutton, Nguyen, and Tran were looking for Khuong Vu ("Vu"), because they believed that Vu was involved in stealing over $100,000 in marijuana from Nguyen. (Ex. 7, p. 1.) When Do arrived at her house and parked her car, she encountered Tran and Sutton in the driveway. (Docket #12, Verbatim Report of Proceedings ("RP"), Ex. 25, p. 80, 131 ("RP 25-80, 131").) According to Do, Tran claimed that he was a police officer, and that he was looking for Khuong Vu ("Vu"), the father of Do's son. RP 25-83. Tran forced himself into the house, and Sutton followed him in. RP 25-95. Tran repeated that he was a police officer and wanted to search the home, but declined to provide identification. RP 25-95, 97, 98. Vu entered the living room of the home from the bedroom. RP 25-103. Tran, who was armed with a firearm, grabbed Vu by the hair and tried to drag him out of the house. RP 25-107. Tran and Vu struggled, and Sutton tried to participate in dragging Vu out of the house. RP 25-110. Tran shot Vu in the foot and knee. RP 25-113, 115. After further struggle, Tran shot Vu in the head. RP 25-126. Vu died at the scene. RP 25-133.

Sutton testified at trial that he had made plans with Nguyen to have dinner the evening of the shootings. RP 33-52. Nguyen arrived at Sutton's house in Federal Way, Washington with Tran, who was driving. RP 33-54. Nguyen introduced Tran as his brother-in-law. RP 33-54. Sutton understood that they were planning to travel to a restaurant in Seattle, but Tran drove to a neighborhood along the way. RP 33-54, 55. Sutton assumed that Tran was going to visit a friend. RP 33-55. Tran and Sutton walked toward the house while Nguyen talked with his wife on a cell phone. RP 33-55, 56. Do arrived in her car, and Sutton observed Tran talking with her and asking for Vu. RP 33-56, 57. Do went into the house to check if Vu was there. RP 33-57. After a while, Tran and Sutton walked up to the porch, and Tran knocked on the door. RP 33-

ORDER – 2

58. Contrary to Do's testimony, Sutton testified that an older lady (Do's mother) opened the door all the way, and it appeared that they were invited inside. RP 33-58, 59. Tran spoke with Do's mother in Vietnamese, which Sutton could not understand. RP 33-61. Vu came out of a side room and had a conversation with Tran in Vietnamese. RP 33-62, 63. Shortly thereafter, Vu pulled a firearm from his belt. RP 33-64. Sutton, presumably fearful for his safety and that of Tran, grabbed Vu, who dropped the firearm. RP 33-64, 65. A struggle ensued in which shots were fired. RP 33-65, 66. Tran continued to struggle with Vu while Sutton ran from the house. RP 33-68. Tran eventually ran from the house and got in the car. Rp 33-69.

The parties agree that Nguyen drove the car onto nearby Interstate 5. RP 33-69, 70; Docket #12, Ex. 6, p. 16. Several police vehicles pursued the car. RP 33-70, 144. Nguyen drove to Lake Union in Seattle. RP 33-71. Sutton jumped into the lake in an attempt to elude the police, but swam back to shore when asked to do so. RP 33-71, 72.

Sutton, Tran, and Nguyen were tried together. A Washington state court jury found all three defendants guilty of first degree felony murder. (Docket #12, Exs. 1, 3.) Sutton appealed his conviction to the Washington Court of Appeals, which affirmed Sutton's conviction. (Docket #12, Ex. 7.) Sutton filed a petition for review in the Washington Supreme Court, which was denied. (Docket #12, Ex. 9.) Sutton filed a Personal Restraint Petition in the Washington Court of Appeals, which was dismissed. (Docket #12, Ex. 19.) Sutton filed a motion for discretionary review in the Washington Supreme Court, and the Supreme Court Commissioner denied review. (Docket #12, Ex. 21.) Sutton moved to modify the Commissioner's ruling, and his motion was denied. (Docket #12, Ex. 23.)

**Discussion**

**I.  Standard of Review**

Federal courts review habeas corpus petitions from state prisoners under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). Under AEDPA, federal courts may not grant a habeas corpus petition unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the

ORDER – 3

State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that of the Supreme Court of the United States on a question of law, or decides the case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application of" clearly established federal law if the state court identified the correct governing legal rule but unreasonably applied it to the facts at hand. Id. at 407. In performing the "unreasonable application" analysis, a federal court may not grant a habeas petition merely because the state court clearly erred in applying federal law. Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003). Rather, the state court's application must be objectively unreasonable. Id.

## II. Constitutional Adequacy of the Information

Sutton argues that the amended information setting forth the charge upon which he was convicted was constitutionally inadequate because it failed to list the elements of each of the three predicate offenses underlying his felony murder charge. The amended information reads in relevant part:

> That the defendant[] BRANDON SUTTON . . . while committing and attempting to commit the crimes of Kidnapping in the First and Second Degree and Burglary in the First Degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death of Khuong Vu, a human being who was not a participant in the crime . . . .

(Docket #12, Ex. 2, p. 8.) The information fails to list the elements of kidnapping in the first degree, kidnapping in the second degree, and burglary in the first degree.

Sutton argues that the Sixth Amendment (as applied to the states by the Fourteenth Amendment) and the Due Process Clause of the Fourteenth Amendment require that the information contain all elements of the offense charged, including the elements of predicate offenses. (Petition for Writ of Habeas Corpus ("Petition"), p. 9.) The state Court of Appeals rejected this argument, relying on State v. Hartz, 65 Wn. App. 351 (1992). (Docket #12, Ex. 19, p. 3.) Hartz noted that an underlying crime is an element of felony murder. Id. at 354. Because the defendant is not charged with the underlying crime, however, the elements of the underlying crime are not elements of the crime of felony murder. Id. Therefore, the Hartz court held that an

ORDER – 4

information containing a felony murder charge that failed to list the elements of the underlying crime was not constitutionally defective. Id. at 354–55. The question is whether Hartz and the state Court of Appeals decision in this case that followed Hartz unreasonably applied clearly established federal law, as determined by the Supreme Court. See 28 U.S.C. § 2254(d).

Sutton first cites several Supreme Court cases from the 19th century to the modern day holding that indictments must contain the elements of the offense charged. In United States v. Carll, 105 U.S. 611, 613 (1881), the Court held that an indictment that omitted a required allegation of knowledge failed to charge the defendant with a crime, since knowledge was an element of the statute. In Ball v. United States, 140 U.S. 118, 136 (1891), the Court held that "[a]ll the essential ingredients of the offense charged must be stated in the indictment," so that the accused could prepare his defense and protect himself against double jeopardy. The Court reversed a murder conviction where the indictment did not contain the victim's place of death, which was necessary to show jurisdiction. Id. at 133, 136. In Cole v. Arkansas, 333 U.S. 196, 200–01 (1948), the Court held that an Arkansas appellate court violated due process by affirming a defendant's conviction by finding that the defendant violated section 1 of a statute, even though the defendants were only tried and found guilty of violating section 2 of the statute. Finally, in Hamling v. United States, 418 U.S. 87, 117 (1974), the Court stated that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

Sutton concedes that there is no Supreme Court authority that specifically requires state charging documents to include the elements of predicate offenses that underlie a charged offense. (Petitioner's Objections to Report and Recommendation ("Objections"), p. 4.) The only relevant rule that the Supreme Court has clearly established is that indictments must contain the elements of the offense charged. The Washington courts have not interpreted Hamling and other Supreme Court cases to mean that the Constitution requires that an information for a charge of felony murder list the relevant elements of the underlying crimes. The Washington Court of Appeals held in this case, as it had in prior cases, that the information need not list the elements of the underlying crimes to pass constitutional muster.

ORDER – 5

This interpretation of Supreme Court law is reasonable. It is a close question whether Supreme Court precedent would require a court to hold that indictments for the crime of felony murder must list all the elements of the predicate offenses, but the Court need not resolve this question. There is a reasonable argument that "the elements of the offense charged," Hamling, 418 U.S. at 117, or "the essential ingredients of the offense charged," Ball, 140 U.S. at 136, do not include the elements of predicate offenses in a felony murder charge. Under AEDPA's permissive standard of review, the determination of reasonableness ends the Court's analysis.

Sutton argues that the Ninth Circuit holds that an information must include the elements of predicate offenses to satisfy due process. See Kreck v. Spalding, 721 F.2d 1229, 1233 (9th Cir. 1983). Sutton is correct, and were the Court reviewing the state courts' determination de novo, it would likely be obliged to grant the petition based upon Ninth Circuit precedent. Kreck provides no help to Sutton under AEDPA's standard of review, as discussed above.

Sutton argues that the line of cases beginning with Apprendi v. New Jersey, 530 U.S. 466 (2000), and continuing through United States v. Booker, 543 U.S. 220 (2005), demand a different result. Apprendi states that "'any fact . . . that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" Id. at 476 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). As the Magistrate Judge and the Washington Court of Appeals noted, Apprendi is inapplicable here. Apprendi holds that facts that increase a defendant's penalty beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Apprendi, by its own terms, does not decide any issue related to the omission of certain facts in the indictment. Id. at 477 n.3. AEDPA does not permit federal courts to grant habeas petitions based upon dicta in Supreme Court decisions. See Winzer v. Hall, 494 F.3d 1192, 1196 (9th Cir. 2007).

The Supreme Court first used the quoted language from Apprendi in Jones v. United States, 526 U.S. 227, 243 n.6 (1999). In Jones, the Court construed multiple sub-parts in a statute as stating elements of a crime rather than sentencing factors. Id. at 232. The Court did so, in part, because of the constitutional question that the statute would raise otherwise. See id. at 239. This question, whether judicial factfinding could increase the maximum penalty for a crime, was one of the issues later resolved by the Court in Apprendi. Nothing in Jones enables

ORDER – 6

the Court to issue a writ of habeas corpus under AEDPA's standard of review. Similarly, Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005), do not enable this Court to issue the writ.

### III. Prosecutor's Statements at Closing Argument

Sutton argues that he was denied his due process right to a fair trial because the prosecutor made improper remarks during closing arguments. "The standard of review for prosecutorial misconduct in federal habeas cases is the narrow one of due process, and not the broad exercise of supervisory power." Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000) (internal quotations and citation omitted). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations and citation omitted). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (internal quotations and citation omitted).

#### A. Comments Relating to the Veracity of Sutton's Testimony and Witness Testimony

Sutton first challenges two of the prosecutor's statements relating to the veracity of testimony by Sutton and members of the Tran family who testified as witnesses to the shooting. The prosecutor first stated:

> [I]f Mr. Sutton told you the truth, nobody is guilty. He's not guilty, Mr. Tran is not guilty, and Mr. Nguyen is not guilty. No question about it. If he told you the truth, nobody is guilty. If you can't decide whether he was telling you the truth, nobody is guilty.

RP 35-53, 54.

Sutton argues that the prosecutor acted improperly by implying "that any uncertainty about Mr. Sutton's veracity would result in all three defendants going free, including the two who fired the shots that killed Vu." (Petition, p. 20.) Sutton believes that the prosecutor sent an inaccurate message to the jury that "if you let one go, you must let them all go." Id. Sutton overstates the prosecutor's argument. The prosecutor did not state or imply that the jury had to find all three defendants guilty, or find none of them guilty. The context in which the statement was made demonstrates that the prosecutor was discussing the credibility of Sutton as a witness.

ORDER – 7

Sutton, Tran, and Nguyen were all charged with the same crime, felony murder, with burglary and kidnapping as the predicate offenses. (Docket #12, Ex. 2, p. 8.) Sutton's testimony indicated that neither he, Tran, nor Nguyen attempted to burglarize the Do house or kidnap Vu. See RP 33, pp. 58–59, 64–68. If the jury believed Sutton's testimony, it would have been highly unlikely, if not impossible, that they could have found that any of the defendants were guilty of the crime charged beyond a reasonable doubt. The prosecutor's statement is supported by the evidence. See Drayden, 232 F.3d at 713 (declining to grant habeas relief based upon alleged prosecutorial misconduct when the prosecutor's statements were supported by the evidence and reasonable inferences that could be drawn from the evidence).

After several minutes discussing Sutton's credibility, the prosecutor mentioned that three of Do's family members testified about the event. The prosecutor then stated:

> [I]f [you] think Mr. Sutton told the truth, they [the three family members] are not just mistaken about what guns were used, they were outright lying to you, and to the police, and to everyone since that murder. And maybe there is a flaw in this logic, but I don't think so.
>
> If Mr. Sutton is telling the truth, those three members of that family were outright deliberate liars. I don't see any other way of reconciling this.

RP 35-60.

Sutton argues that the prosecutor improperly stated that, to acquit Sutton, the jury would have to find that the three family members who testified were lying. (Petition, p. 19.) Such a statement would likely be improper, see United States v. Richter, 826 F.2d 206, 209 (2d Cir. 1987), but the prosecutor did not make such a statement. The context of the prosecutor's remarks demonstrates that the prosecutor was permissibly commenting on, and voicing doubt about, the veracity of Sutton's testimony. See United States v. Hoelker, 765 F.2d 1422, 1426 (9th Cir. 1985) (noting that prosecutors may voice doubt about the veracity of a defendant's testimony when such comments are supported by the record). The prosecutor discussed why the testimony of Sutton and that of members of the Do family was irreconcilable. RP 35-60, 61. The prosecutor was permissibly making the point that the jury would have to determine which version of facts to believe. See United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999)

ORDER – 8

(discussing a similar situation). Although it is possible that the prosecutor's remark could be misinterpreted in the manner that Sutton suggests, the Court declines to find that the jury interpreted the remark in such a manner. See Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

**B.    Comments at the Beginning and Conclusion of Closing Argument**

Sutton argues that the prosecutor improperly appealed to the passions and prejudices of the jury in certain remarks he made during closing argument. (Petition, pp. 20–21.) Near the beginning of the prosecutor's closing argument, he stated:

> But [the defendants] took some things from that living room, which have never been returned to that family. They took a sense of safety, a sense of security, a sense of peace that has yet to be recovered. Only the passage of time, the power of humans to heal, and luck, will ever restore what was taken from the Dos that night.
> It is beyond our power to do it.
> But in an hour or two, when the lawyers finally stop talking, you will have the power, and you will have the responsibility, and you will also have the privilege to see that justice at least is done.

RP 35-28.

At the conclusion of his closing argument, the prosecutor stated:

> And so I would suggest to you that when you go and reach your verdict, you then go home and gather around you those people that are most important and closest to you. And you hope with all your heart, and you pray. You pray that you never ever have to see anything like this happen to you.

RP 35-62.

Some of these remarks may have been improper. The final remark, in particular, appears to be "designed to encourage the jury to enter a verdict on the basis of emotion rather than fact." United States v. Weatherspoon, 410 F.3d 1142, 1150 (9th Cir. 2005). The remarks do not, however, rise to the level of a due process violation. The remarks consist of one or two isolated statements during closing argument, and are not the theme of the prosecutor's argument. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996). To the extent that the remarks appeal to jurors' sympathy or prejudice, they run contrary to the trial court's instructions to the jury. (See Docket #12, Ex. 2, p. 23.) The jury is presumed to have followed its instructions.

ORDER – 9

Ortiz-Sandoval, 81 F.3d at 899. The prosecutor did not argue that the community or the jurors themselves would be safer if the defendants were found guilty, or that a guilty verdict would deter future lawbreaking. Cf. Weatherspoon, 410 F.3d at 1149. The prosecutor did not ask the jury to use its verdict to make a statement about a particular societal issue or crisis. See United States v. Leon-Reyes, 177 F.3d 816, 823 (9th Cir. 1999). It cannot be said that these two remarks, in isolation, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181.

Sutton cites several cases to support his argument that his conviction violated due process. Only one of the cited cases, Hance v. Zant, 696 F.2d 940 (11th Cir. 1983), involves a habeas corpus petition and its attendant standard of review. Hance was overruled in large part by Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985) (en banc). To the extent that Hance is still good law, it is inapposite. In Hance, the prosecutor argued to the jury that they should sentence the defendant to death, rather than life imprisonment, because of the risk that he might escape or the risk that he might harm or kill prison guards. Id. at 952. The prosecutor also implied that the jury should use the case as an opportunity to take a stand in the war on crime. Id. The prosecutor's remarks in the present case, even if improper, do not ask the jury to convict the defendants as a method of fighting society's greater ills.

Sutton argues that, because the state court did not cite federal law in rendering its decision regarding prosecutorial misconduct, this Court should apply a more relaxed standard of review. (Objections, p. 5.) Specifically, Sutton asks the Court to conduct an independent review of the record to determine whether the state courts' decisions regarding prosecutorial misconduct were objectively unreasonable. This argument fails. Sutton's proposed standard of review applies only when no state court has explained its reasoning on a particular claim. See Richter v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008). The Washington Court of Appeals explained its reasoning in this case, even though it did not cite any federal caselaw. (See Docket #12, Ex. 19, pp. 4–7.) A state court's failure to cite federal law when explaining its reasoning does not preclude application of AEDPA's standard of review. See Early v. Packer, 537 U.S. 3, 8 (2002) (applying the AEDPA standard even though the state court failed to cite any federal law). Even if the Court were to adopt Sutton's proposed standard of review, his claim would still fail. The Washington

ORDER – 10

courts' determination that the prosecutor's closing argument did not violate Sutton's due process right to a fair trial was not unreasonable.

## Conclusion

The Washington courts did not unreasonably apply clearly established federal law, as determined by the Supreme Court, in concluding that an information need not list the elements of predicate offenses in a felony murder charge. The Washington courts did not unreasonably apply clearly established federal law in failing to grant post-conviction relief based upon the prosecutor's statements during closing argument.

The Court adopts the recommendation of the Magistrate Judge. Sutton's petition for a writ of habeas corpus is DENIED, and this action is DISMISSED with prejudice. The Clerk is directed to send a copy of this Order to counsel of record and to Judge Theiler and to Petitioner by mail.

Dated: August 5, 2008.

Marsha J. Pechman
U.S. District Judge

ORDER – 11